Number 162052, AES Puerto Rico, L.P. v. Marcelo Trujillo-Panisse, et al. Mr. Kaisler, good morning. Good morning, Your Honors, and may it please the Court. Peter Kaisler on behalf of the appellant, AES Puerto Rico, and may I have the Court's permission to reserve three minutes for rebuttal? You may. Thank you, Your Honor. The issue in this case is the lawfulness of two ordinances that prohibit the placement of CCRs anywhere on the ground in the municipalities of Humacao and Pinuelos. And there are two aspects of this case that should have been dispositive of our preemption claims here. The first is that these ordinances prohibit the very activities that the Puerto Rico Environmental Quality Board, EQB, has specifically and expressly authorized, the use and disposal of CCRs at approved landfills in these two municipalities. And the second is that EQB issued these authorizations acting as the agency designated by the Legislative Assembly of Puerto Rico, both to implement RCRA and to issue binding rules and orders under Puerto Rico law. And it issued these authorizations only after determining that these landfills meet all federal and Puerto Rico requirements, including that there be, quote, no substantial probability of any adverse effect on health or the environment. And under these conditions, the ordinances, we believe, are preempted by both federal law and by Puerto Rico law independently. And I'll begin, if I might, with the federal preemption claim. Supreme Court said in international paper versus Willett that among other grounds, local law is preempted if it interferes with the methods that Congress has established in a statute in order to effectuate its goals. And the method that Congress established in RCRA is to regulate through state plans approved by the EPA. And that method cannot possibly function if any municipality can veto the determination of a state agency acting pursuant to its state plan. Can I make sure I understand the argument then? Suppose EQB had not issued the regulations that it issued. Would there still be RCRA preemption in consequence of the ordinance? We would want to be able to argue in that case, Your Honor, that there would be preemption even in that instance on a broader and, frankly, more difficult theory than the one we're arguing for and need here. But the narrow one is dependent on the EQB having issued those regs. Yes, Your Honor. So can I just ask you then, that seems to me just to raise a puzzle, which is if the EQB regs are properly understood as a matter of Puerto Rico law to contemplate municipal override, then how can the existence of the EQB regs help you on your preemption argument? Do you follow? I do, Your Honor, and I would answer that with a couple of things. The first is with the text of RCRA, which is in 6947C, and that's reproduced at page 124 of our addendum. RCRA specifically says that nothing in this subchapter, the subchapter dealing with non-hazardous waste, shall be construed to prevent or affect any activities carried out under local law unless such activities are inconsistent with a state plan approved by EPA. In this case, and I don't mean to fight the hypothetical, and so if I am I will change the answer, but in this case the plan approved by EPA specifically said that EQB has exclusive authority. But taking Your Honor's hypothetical, if the state plan contemplated that there would be municipal override, then we wouldn't be able to argue that the municipal ordinances are inconsistent with that state plan, and then we would have to rely on a much broader and, as I said, more general preemption argument. So if that's right, then there's no way to decide either the Puerto Rico law issue or the RCRA preemption issue without resolving whether the EQB regs preempt local law. It's the same question in both instances, right? In a sense, Your Honor, it is, and certainly both our federal preemption and our commonwealth preemption arguments do depend on those EQB resolutions. But if I could turn then to the question Your Honor just specifically raised, because Judge DeSosa in the decision below specifically said that he agreed that if the commonwealth EQB resolutions carried the full force of law, then the ordinances would likely be preempted. But, he said, the question of whether those resolutions carried the full force of law was a novel and complex and unsettled one. Counsel, on that issue, I assume your client sought those permits from the EQB, is that? Not us, Your Honor. It was the landfills in which the waste would be deposited. Okay, but whoever sought those permits, had they been denied, could they have then appealed those decisions to the superior court? Yes, under the Puerto Rico Administrative Procedures Act, any order, any final order of the EQB would then be appealable. And the Administrative Procedures Act also says, though, that those orders are effective unless stayed by the superior court. And that's important because it's one of many indications that there really is no question under commonwealth law that EQB resolutions carry the full force of law. I don't think I saw, did the district court give any reason why the ruling that's at issue here does not have the status of law that would then lead to a question as to whether it can be the source of state preemption of the municipal ordinance? He did not, Your Honor. And neither did defendants argue before him or even in defending the decision before this court that there is any question as to whether EQB resolutions carry the full force of law. It is a criminal misdemeanor to violate an EQB resolution. But there is a question as to whether it can have preemptive force with respect to local law. I don't think that is a question, Your Honor. We cite the Lopez versus San Juan case of the Supreme Court of Puerto Rico in which the Supreme Court made clear that a commonwealth agency exercising delegated authority from the legislative assembly preempts municipal law. This court in Judge Trujillo's decision in the Liberty Cable Division case cited Lopez, very parallel situation, a federal statute, a Puerto Rican agency delegated authority to implement that statute by the legislative assembly. What the court said there and what the Supreme Court of Puerto Rico said in Lopez is that it may just reduce the – I mean, we may just keep coming back to versions of the same question, which is was it the intention as a matter of Puerto Rico law that the authorization that EQB provided for was meant to preclude an opt-out by the municipality? And I do think that is crystal clear, Your Honor. First of all, the autonomy – But just before you go into the merits of that, I just want to make sure that I understand what you're arguing and what you're not arguing to us. Are you separately arguing that independent of that, even if it contemplated an opt-out, it is preempted by RCRA, the ordinance? We – I'm loathe to spend a lot of oral argument time defending – I'm not asking – But we would argue – Have you – did you argue that to the district court and did you argue it to us? We did argue that any state law that would purport to prohibit an activity that RCRA expressly seeks to authorize would be preempted on the theory that if every state adopted the same – Even though it's disjunctive. That's right, Your Honor. But I don't – that is not our principal basis for arguing here. I just don't want to concede the point on behalf of my client in the setting. Our point really does turn, as Your Honor indicated – The reason I'm pushing on it is because it may matter a little bit whether if there's a question to certify we have any business certifying it because if there's an independent ground to resolve the case on, then to ask the Puerto Rico Supreme Court to resolve something that's not necessary to the outcome is a bit of a waste of time. So it seems somewhere important to understand whether ultimately a preemption argument does turn on whether the EQB meant to preempt or whether it's a relevancy for the RCRA argument and actually the RCRA argument can stand even if the EQB rigs were not intended to preempt. For purposes of this case, Your Honor, we are relying on the EQB resolution and we are only seeking to do the limited activities that EQB has specifically authorized. And with respect to certification, while we certainly think certification would be a better outcome and a more appropriate outcome than the dismissal, we actually don't think it is the best and most natural outcome here because certification would require the court to determine that there is an unsettled question of Puerto Rican law as to whether or not EQB resolutions carry the full force of law. And we just don't think it is tenable to suggest that these resolutions, the violation of which is a criminal misdemeanor subject to a range of penalties, administrative, civil sanctions, criminal contempt, criminal convictions, that they do not carry the full force of law. And to take Your Honor's other question, which is well maybe they carry the full force of law but do they have preemptive effect, that is what the Supreme Court of Puerto Rico said they do in Lopez and in the most, I'm sorry Your Honor. The third quick point is for you to win, they also have to in fact have preemptive. Well, I'm not sure there's a difference, Your Honor, between that question and the one I just answered. Well, just in the sense that it's styled as an authorization. That's right. And then it says, if I understand it, if you want to have other beneficial uses, you should come and ask for us. That's right. So you might have thought that one way to understand the scheme is that the EQB made sure that if you're going to use a landfill, it's got to be this kind of landfill, these ones are authorized. Other uses, if the municipality banned that, you come and ask and we'll figure it out. And so I guess that's an alternative plausible textually, at least it seems to me. One could read it that way. So what's wrong with that? Because then you'd have the municipalities prohibiting the specific activity that EQB expressly authorized. And this is a context in which these wastes are going to exist and they have to be disposed of somewhere. So when EQB authorized these landfills, it wasn't simply saying, well, if you want to, go ahead. It was solving a problem that Puerto Rico would otherwise have, which is what to do with these wastes which aren't banned. There are other things you can do with them other than landfill use, aren't there? Well, in Puerto Rico, the only approved uses are disposing or using them in these landfills. There are other possible uses. Is that because of EQB? Yes. But EQB contemplates that there could be other ones. You just have to make the proposal. We or somebody else. But no proposal has been made. That's right. But these are 200,000. Are there other possible options? Not to deal with 200,000 tons of CCRs a year. These are the landfills that have entered into contracts to take them. Other landfills have not. No, I understand that. It's useful to you right now. I'm just saying. Well, in terms of what is available in the market within Puerto Rico to deal with this problem, EPA sent a letter, and this is on page 662 of the joint appendix to EQB, saying a disposal option needs to be made available for these materials. The orders here issued under the plan were EQB's response to that letter and to the issue of what is the safest and most proper and environmentally conscious way of disposing of these wastes. Yes. I mean, how does this issue play out for the EQB, that is in deciding that the landfill option is appropriate? Are other methods of disposal considered? Is that a part of the proceeding? I know you were not the party seeking the permit, but if you know, were other methods of disposal considered before the EQB? No, Your Honor, because the way the process works is entities make affirmative applications. So, in this case, the Pinuelos Valley Landfill made an application. The El Coqui Landfill in Humacao made an application, and the EQB adjudicated that application and granted the authorization. So, someone else, it wasn't taking a global look and saying what uses will we prohibit and what will we permit. It said everything. But these are controversial. I assume there were those opposing the granting of the permit, arguing that this particular method of disposal has environmental risks. Other methods of disposal should be considered. Isn't that how a proceeding like this would normally? I don't know whether oppositions were actually filed, but even if they were, EQB resolved those issues by affirmatively authorizing the disposal. But that's only part of the way they resolved it. Because the other part of the resolution was that this is authorized. Other beneficial uses that you'd like, you should come and ask us for. That's right. So, what are we supposed to do with that? Because if there are other beneficial uses of CCRs that can exist in the world, now, it happens your client doesn't want to use one of those. But why is that of relevance for determining the preemption issue? Well, both a legal and a practical answer, Your Honor. The legal answer is that our position is that once EQB has affirmatively and expressly authorized it, a municipal ordinance which seeks to prohibit that which EQB has authorized in the preemption terms stands as an obstacle to the achievement of the objectives and is therefore preempted. Objectives of the EQB? It is both the objectives of RCRA, if we're talking about a federal preemption argument, but also the objectives of the legislature in Puerto Rico, when it specifically gave EQB the, quote, authority, close quote, this is the Environmental Public Policy Act, to choose the sites and methods to dispose of solid waste and to implement a permit system under RCRA. When EQB chooses the sites and methods to dispose of solid waste, it's not merely granting an optional permissive. But it literally did. In the sense that it said this is authorized, but other beneficial uses, if you propose them to us, might be authorized too. Well, but then we get to the practical answer, Your Honor, which is, and this is why I said there are 200,000 tons of this a year. As the amicus brief pointed out. Please be brief because you're three minutes over your time. Will do, Your Honor. As the amicus brief pointed out, 75% of the uses of CCRs are put to require depositing them on the ground. Realistically, if you prohibit the depositing them on the ground, you prohibit a reasonable way of solving this problem. And with the Court's permission, I will reserve the remainder of my time. Thank you. Mr. Mayor, Your Honor. Attorney Francisco Medina appearing on behalf of the APLIS. I would like to begin by addressing a threshold issue with regards to any possible preemption by RCRA on the state's ability to regulate non-hazardous wastes. Now, the first thing we must do is to differentiate between the regulatory approach that the EPA under RCRA applies to hazardous waste as opposed to non-hazardous waste. Now, until 2015, the CCRs were classified as hazardous waste. And under that classification, the regulatory scheme that applied under RCRA was subtitle C, which is what is called a cradle-to-grave regulatory scheme. And basically states that from the mining or manufacturing, all through the life cycle of the material on to final disposition, the RCRA and the EPA is going to be regulated. Now, after 2015, mid-2015, the CCRs were classified, the classification was changed to non-hazardous waste. And that is a very important distinction that we need to make bearing some of the case law that was cited by appellants. Under non-hazardous waste, under subtitle D, are not regulated by the EPA. And so, with regards to any issue of preemption by RCRA, we don't need to make an obscure legal interpretation of some combination of laws. We just need to read the law. And most clearly, the final rule on combustion residuals, which is ADFR 21.302-01. Just by reading it, it says, the federal role is to establish the overall regulatory direction by providing minimum nationwide standards that protect human health and the environment, and to provide technical assistance to states for planning and developing their own environmentally sound waste management practices. The actual planning and any direct implementation of solid waste programs under RCRA, subtitle D, however, remains a state and local function. And the act envisions that states will devise programs to deal with state-specific conditions and needs. EPA has no role in the planning and direct implementation of the minimum national criteria. Counsel, that scenario may help you on the federal preemption argument. Yes, it does, Your Honor. But you then have delegation of authority to, in Puerto Rico, it's the Environmental Quality Board. Puerto Rico enacts an Environmental Policy Act, which delegates responsibility to the Environmental Quality Board to deal with this type of environmental issue. And then the board, pursuant to that delegated authority, issues permits specific to the two communities that issue here, specifically authorizing the use of these CCRs as a landfill cover. Yes, Your Honor. Despite those specific rulings by the Environmental Quality Board, the municipalities enact ordinances precluding the very option which the Environmental Quality Board has authorized. And just to, I guess, complete the scenario, although municipalities do have authority under Puerto Rico law to deal with waste issues, they have to do so in a way that is consistent with state law. So how do you reconcile what the municipalities did here with the authority that the state has given to the Environmental Quality Board to deal with this very type of disposal issue? Yes, Your Honor, that is a very important issue that we need to clarify. First of all, the municipal ordinances came before the permits in terms of time frame. Additionally, whether or not the municipalities, the broader scenario may be that the legislative branch, which has the inherent ability to regulate the authority under the Constitution, delegated that authority to what we may refer to as legal creatures. It created these legal entities, both municipalities and the EQB, and it delegated to the EQB and to the municipalities what appears to be similar authorities on the regulation of solid waste. Now, that issue is an issue of state law, and we believe that the Court wisely decided to defer to the local courts, to the Commonwealth Courts, that very important, novel, complex issue that would have broad implications towards the relationship between the governments. What is so complicated about the issue? I mean, you have the Environmental Quality Board specifically issuing permits, making rulings that result in the issue of permits, which for the reasons we've discussed seem to have all, these rulings seem to have all the hallmarks of law. And then you have local ordinances, which directly contravene those rulings by the state board. What's complicated about that? The conflict, it would seem, could not be clearer. It is a very complicated issue, because we would need to enter into the details of the delegation that was given. And the delegation given to the EQB is containing one sentence, maybe one paragraph, of the law. So it really, the Court really would need to delve into interpreting the, you know, a comma-separated list of, you know, of these authorities that are being given to EQB. However, the Autonomous Municipalities Act is very specific, and it contains a detailed delegation for the power of regulating solid waste itself. Now, that may be an issue which we contend is an issue of state law. Now, I want to put one point across with regards to that, because issues number two and three, as numbered by appellants in their brief, address the issue of preemption by EQB, and what they understand is the Court's better judgment to certify the issue with the state court. Now, as was added to- Before you turn to that, I just don't think I quite heard an answer to Judge Lopez's question. What is the affirmative argument as to why the granting of the authorization by EQB is not in conflict with an ordinance that prohibits you from putting it in the landfill? Well, Your Honor, the argument, the natural argument would be that the delegation that was given to EQB does not encompass necessarily the approval of certain uses, and the Autonomous Municipalities Act empowers municipal governments to regulate that area. Are you arguing that EQB acted beyond its authority in issuing these permits? What I am arguing, Your Honor, is that that is a non-resolved issue that the, you know, preferably Commonwealth Court would have to address. I'm not saying one thing or another. I would argue that the municipalities have the authority, but the issue that I want to present- I take it you can't put material in the landfill absent a permit from EQB, correct? The EQB authorizes the use of a landfill. If it hasn't authorized it, you couldn't put it in the landfill, correct? I understand the question. The EQB authorizes the construction and the operation of the landfill. It may be argued- The landfill couldn't receive it without the permit. That is correct. Okay, so the landfill couldn't receive it without the permit. So if that is the question, the answer is yes. Okay, so EQB can at least do that. It can authorize something that otherwise would be prohibited, which is for the landfill to receive the CCRs. Well, it would be prohibited to operate the landfill at all. Yeah. So then the issue is, given that it's done at least that, why don't we read that to have prohibited the municipality from precluding the landfill from being used consistent with the permit? What's the reason why one would think that EQB having, as a state agency, said it's okay to use the landfill, meant it's okay unless the municipality says it's not okay? Well, Your Honor, the broader point that I want to get across is that that issue, which is inherently a state, a commonwealth issue, has been resolved. And so I just wanted to point out a judgment by the Supreme Court, which is in the appendix, and it could not be clearer. It literally reads, we decide, referring to the Supreme Court, that the matter related to the use of ash produced from burning coal has not been preempted by federal or state government, and that the municipality of Panuela, in this particular case, has the legal authority to prohibit its use within its territorial boundaries. So on the issue of certification or not, we believe that this recent case really dispels the, it becomes a non-issue. It has been resolved by the Supreme Court of Puerto Rico. That case that you're citing, is that a case involving the kind of permits that we have here, issued by the Environmental Quality Board, which specifically permit an activity, which the local ordinance now prohibits? Your Honor, this case was filed by the landfill, the Panuela Valley Landfill, which is the one that counsel had been referred to during his turn for arguments. It was filed during the pendency of the district court trial, the one that we're hearing today, and it was resolved after the briefing for the appellate courts, and was later submitted to be added to the appendix by appellants. And we feel that it really dispels at least two of the issues, the main issues, with regards to local law. First, the request that the matter be certified, we believe that there's no reason for that,  and also the issue of whether EQB preempts the authority of the municipalities to regulate, and it reads, prohibit the use within its territory boundaries. So we believe that that really dispels any issue that may remain, or any doubt that may remain, as to commonwealth law. And before I end, I just want to restate that the record apprehension may also be dispensed by the reading of the final rule on carbon combustion residuals. So really, the issues, the municipalities' position is that really the issues are resolved just by reading the law, or in this case, the Supreme Court's Puerto Rico determination. The Puerto Rico Supreme Court case you're referring to concluded that the ordinances ban all uses of CCRs in the territorial limits, or just ground? Is there any use under these ordinances that is permissible? That is a very important matter. We need to clarify that the regulatory authority that we are contemplating is that of disposing of these materials in landfills, on the ground, and so forth. There are other issues, other uses that have been argued and not contended by the defendants, such as wallboard manufacturing, concrete, and other uses that may very well be, continue to be used without any, so if I may, I just want to encompass the regulatory scheme that we are contemplating onto the facts brought on the case, which are the disposition and use in landfills. Thank you. I believe we have two minutes. Thank you, Your Honor. I would like to address the Supreme Court of Puerto Rico decision that my brother counsel just referenced, and then I'd like to respond to some of the questions the court has asked about the relationship between Commonwealth and municipal law. With respect to the Supreme Court decision in the Ecosystems case, that's the decision we supplied a 28-J letter to the court about. It supports our position in this case. That dealt with a different resolution regarding a different landfill relating to the construction of that landfill. And what the Supreme Court of Puerto Rico said is that resolution did not authorize the use of a CCR product in the construction to build the road to that landfill, and therefore the municipal ordinances could be enforced as to the construction of that landfill. But the Supreme Court would not have needed to parse the language of that EQB resolution to determine that it didn't permit the activity unless it understood, as its prior decisions have said, that EQB resolutions would otherwise preempt inconsistent municipal law. But in that case, they hadn't sought the permission that they could have sought from EQB to use that as a beneficial use, correct? That's correct, Your Honor. So that just returns us to the question of whether the EQB reg was contemplating a complete ban on CCRs. And it was just saying this is an authorized use, but if there are other ones, come ask. It does, Your Honor. And let me address then that more specific question, which is that while certainly there are opportunities to seek other uses, these uses have been authorized. And we think this case turns on what the legal significance of that authorization is, whether or not there might be future applications in the future for different uses. And as to that, the Puerto Rico law is very clear. The plan that EQB submitted to EPA under RCRA was required by RCRA, among other things, to specify what level of government within Puerto Rico would have what authority. And the Puerto Rico plan approved by EPA, and this is in 207 of the addendum to our reply brief, says EQB will have exclusive responsibility for implementing and enforcing the non-hazardous waste management. And CCRs, contrary to what Brother Counsel said, CCRs have always been regulated federally as non-hazardous wastes. So they have exclusive responsibility, and they have authority under the Environmental Public Policy Act of Puerto Rico to designate the sites and methods for disposal of solid waste. That's the authority they exercised here, and they exercised it by granting a permit, an authorization. That is not simply permission. That is a legal right to engage in the activity permitted and authorized. And if a municipality purports to prohibit that which EQB has expressly and specifically granted us legal authority to do, then that is not in harmony with the public policy of EQB. And the Autonomous Municipalities Act states that municipalities may regulate in the area of solid waste only insofar as that regulation is in harmony with the public policy of the commonwealth. Thank you. Thank you, Your Honor.